UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN MAGUIRE,

        Plaintiff,                                     Hon. Richard Alan Enslen

v.                                                    Case No. 1:06-CV-344

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

        The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 46 years of age at the time of the ALJ's decision. (Tr. 12). He earned a General Educational Development (GED) diploma and worked previously as an electrician. (Tr. 12, 62, 85).

Plaintiff applied for benefits on December 18, 2001, alleging that he had been disabled since June 23, 2000, due to back pain and hepatitis C.  (Tr. 40-42, 56). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 24-46). On July 8, 2004, Plaintiff appeared before ALJ Earl Witten, with testimony being offered by Plaintiff and vocational expert, Donald Hecker. (Tr. 313-41). In a written decision dated December 20, 2004, the ALJ determined that Plaintiff was not disabled. (Tr. 12-19). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

On March 16, 1992, Plaintiff underwent back surgery. (Tr. 302). Specifically, doctors performed a laminectomy and discectomy. *Id.* Plaintiff also underwent an unspecified surgical procedure on his back in 1994. (Tr. 306).

3

A CT exam of Plaintiff's lumbar spine, performed on January 31, 1997, revealed a "small" herniation at L5-S1, but the remaining discs were "normal." (Tr. 86). There was also no evidence of facet joint hypertrophy or other bony abnormality. *Id.* X-rays of Plaintiff's lumbar and thoracic spine, taken the same day, revealed no evidence of abnormality. (Tr. 87-88).

On November 3, 2000, Plaintiff was examined by Dr. Kevin Fitzgerald. (Tr. 90). An examination of Plaintiff's back revealed tenderness, but no evidence of swelling or inflammation. Plaintiff experienced pain on flexion or extension, but straight leg raising was negative. The doctor concluded that Plaintiff was experiencing a "mechanical problem." *Id.*

On November 13, 2000, Plaintiff participated in a total body bone scan, the results of which revealed no abnormality in the lumbosacral spine. (Tr. 91). X-rays of Plaintiff's lumbosacral spine, taken the same day, revealed "mild" degenerative changes. (Tr. 92).

On March 6, 2001, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed degenerative changes, as well as a herniation at L5-S1. (Tr. 94-95).

On March 15, 2001, Plaintiff was examined by Dr. Kenneth Easton. (Tr. 97). Plaintiff reported that he was experiencing lower back pain which radiated into his left lower extremity. An examination of Plaintiff's lower extremities revealed 5/5 strength and no evidence of sensory abnormality. Romberg testing[1] was negative. Plaintiff walked with a normal gait and was able to heel-toe walk. He also exhibited full range of hip motion. *Id.*

On September 19, 2001, Plaintiff was examined by Dr. Benjamin Bruinsma. (Tr. 110-11). Plaintiff reported that he was experiencing back pain. (Tr. 110). Straight leg raising was

---

[1] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on May 11, 2007). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

negative and Plaintiff exhibited no strength, reflex, or sensory abnormality. (Tr. 110-11). The doctor concluded that Plaintiff's back pain was mechanical in nature. (Tr. 111). Plaintiff was prescribed Celebrex. *Id.* When examined by Dr. Bruinsma on October 11, 2001, Plaintiff reported that his pain had "significantly improved." (Tr. 112).

On January 18, 2002, Dr. Bruinsma completed a report regarding Plaintiff's ability to perform work-related activities. (Tr. 124-25). The doctor characterized Plaintiff's condition as "stable." (Tr. 125). The doctor reported that during an 8-hour workday Plaintiff can stand for two hours, walk for two hours, and sit for six hours. The doctor also reported that Plaintiff can occasionally lift 10 pounds. *Id.*

On February 26, 2002, Dr. Bruinsma reported that Plaintiff can walk, squat, heel/toe walk, climb stairs, and get on/off an examination table without difficulty. (Tr. 99). The doctor also reported that Plaintiff can sit for four hours, stand/walk for one hour, and occasionally lift 10 pounds. (Tr. 102-03).

On March 21, 2002, Plaintiff was examined by Dr. Bruinsma. (Tr. 143-44). Plaintiff exhibited 5/5 strength in his lower extremities and was able to heel/toe walk. (Tr. 143). Straight leg raising produced "discomfort" on the left, but was negative on the right. Plaintiff exhibited full range of lumbar motion. The doctor reported that there was no evidence that Plaintiff was experiencing radiculopathy. *Id.* The doctor concluded that Plaintiff was experiencing discogenic or mechanical pain for which he instructed Plaintiff to perform stretching and strengthening exercises. (Tr. 143-44).

On March 29, 2002, Plaintiff reported to Dr. Gregory Cammell that he was experiencing "disabling back pain and wanted to be put on permanent disability." (Tr. 158). On

5

May 21, 2002, Plaintiff reported to Dr. Cammell that he was experiencing "back pain and trouble with fatigue." (Tr. 157). Dr. Cammell reported that Plaintiff "continues to angle for disability" which the doctor concluded "is not something I am confident that he needs." *Id.*

On January 5, 2004, Plaintiff was examined by Dr. Bruinsma. (Tr. 175-76). Plaintiff reported that he was experiencing low back pain which radiated into his left lower extremity. (Tr. 175). Plaintiff was in no apparent distress. He exhibited 5/5 strength in his lower extremities and was able to squat and recover. Straight leg raising was negative. *Id.*

On January 12, 2004, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed no evidence of herniation, stenosis, or vertebral body abnormality. (Tr. 159-60).

On February 13, 2004, Plaintiff participated in a nerve conduction study, the results of which revealed no evidence of radiculopathy or neuropathy. (Tr. 171-72). Plaintiff was instructed to continue performing his prescribed exercises. (Tr. 172).

The same day Dr. Bruinsma completed a report regarding Plaintiff's ability to perform work-related activities. (Tr. 184). The doctor characterized Plaintiff's condition as "stable." The doctor reported that Plaintiff can occasionally lift 10 pounds and during an 8-hour workday can stand, walk, and sit for only one hour each. *Id.*

On June 15, 2004, Plaintiff was examined by one of the physicians at Michigan Pain Consultants. (Tr. 307-08). Plaintiff exhibited "restricted" range of lumbar motion, but "normal" range of motion of the cervical spine and upper extremities. (Tr. 307). Straight leg raising produced pain, but no evidence of radicular symptoms. An examination of Plaintiff's extremities revealed normal strength and no evidence of joint abnormality. Plaintiff was diagnosed with degenerative

6

disc disease. *Id.* The doctor concluded that while it would be "difficult" for Plaintiff to return to his previous work as an electrician "he should be able to do light or sedentary work." (Tr. 307-08).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) degenerative disc disease; (2) status post laminectomy; and (3) hepatitis C. (Tr. 16). The ALJ

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 16-19). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

Plaintiff bears the burden of demonstrating his entitlement to benefits, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) he cannot lift more than 10 pounds; (2) he cannot perform repetitive bending, twisting, or turning

activities; (3) he cannot crawl, squat, kneel, or climb; and (4) he requires a sit/stand option. (Tr. 16). The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Donald Hecker.

The vocational expert testified that there existed approximately 16,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 339-40). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988).

a. The ALJ's RFC Determination is Supported by Substantial Evidence

Plaintiff raises a sole claim on appeal. He asserts that the ALJ's RFC determination is not supported by substantial evidence. As noted above, the ALJ determined that Plaintiff retained

the capacity to perform sedentary work subject to the following limitations: (1) he cannot lift more than 10 pounds; (2) he cannot perform repetitive bending, twisting, or turning activities; (3) he cannot crawl, squat, kneel, or climb; and (4) he requires a sit/stand option.

First, there is no evidence that Plaintiff's back surgery was unsuccessful. In fact, just the opposite appears to be the case, as Plaintiff was able to work for several years following such. Moreover, as the ALJ observed, while the objective medical evidence supports the conclusion that Plaintiff experiences significant functional restrictions such do not render him completely disabled. A CT scan of Plaintiff's cerical and lumbar spine produced unremarkable results. A bone scan revealed no abnormality in Plaintiff's lumbosacral spine. X-rays revealed only mild degenerative changes. The results of an MRI were unremarkable. A nerve conduction study revealed no evidence of radiculopathy or neuropathy.

The results of physical examinations likewise fail to support the conclusion that Plaintiff is unable to perform a range of sedentary work activities. Plaintiff consistently exhibited 5/5 strength in his lower extremities with no evidence of sensory impairment. Straight leg raising produced no evidence of radicular symptoms. Plaintiff was able to walk, squat and recover, and heel/toe walk without difficulty. Plaintiff's care providers consistently concluded that Plaintiff suffers from a mechanical problem for which he was instructed to perform stretching and strengthening exercises. While Plaintiff's care providers reasonably determined that Plaintiff was unable to return to work as an electrician they consistently reported that he was capable of performing a range of sedentary work. In sum, while the medical evidence *may* have supported a different conclusion regarding Plaintiff's RFC, the ALJ's conclusion regarding Plaintiff's RFC is certainly supported by substantial evidence.

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date:  May 21, 2007                                      /s/ Ellen S. Carmody
                                                        ELLEN S. CARMODY
                                                        United States Magistrate Judge